# 2004 DTA 118

## TRIBUNAL DE CIRCUITO DE APELACIONES

### SECRETARIO DE HACIENDA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO
*Ex-Parte*

-----------------------

### SECRETARIO DE HACIENDA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO
·Recurrido

v.

INVERSIONES ISLETA MARINA, INC.
Peticionaria

------------------------

SECRETARIO DE HACIENDA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO
Recurrido

v.

SAN JUAN BAY MARINA, INC.
Peticionaria

------------------------------

PONCE YACHT AND FISHING CLUB, INC.
Peticionaria

v.

SECRETARIO DE HACIENDA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO
Recurrido

Núms. Cons. KLCE-2002-01217 / KLCE-2003-00571
KLCE-2003-01245 / KLCE-2003-01269

San Juan, Puerto Rico, a 23 de junio de 2004

Panel integrado por su Presidente, el Juez Ortiz Carrión,
y los Jueces González Rivera y Rivera Román

Rivera Román, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El asunto ante nuestra consideración plantea una importante controversia en torno a la facultad del Secretario de Hacienda para requerir información y su poder de realizar investigaciones.

El Secretario de Hacienda (en adelante el Secretario) envió a varias Marinas que ubican en diversas partes de Puerto Rico un requerimiento de información sobre los contratos de arrendamiento de espacio para embarcaciones mayores de 30 pies de eslora. Estas Marinas objetaron la entrega de la información y el Secretario acudió en búsqueda de una orden para que se entregara la misma al Tribunal de Primera Instancia (en adelante TPI). El TPI concedió la orden en cada caso, pero luego reconsideró en uno.

Inconformes con la determinación del TPI, el Procurador General presentó en uno de los casos una petición de *certiorari* y en los restantes casos, las Marinas requeridas radicaron igual recurso.

Mediante resolución del Tribunal de Apelaciones de 17 de diciembre de 2003, se consolidaron los cuatro casos por entender que planteaban situaciones jurídicas similares.

Todos los casos se iniciaron mediante una orden de *sub poena duces tecum*, solicitada *ex-parte* por el Secretario en relación a la responsabilidad contributiva de "*Juan del Pueblo*" para el período del año 1998 al 2002. En dicho requerimiento se solicitó la siguiente información:

"*Por el presente, se le cita y requiere para que comparezca a través de sus oficiales autorizados ante Ramón Cordero..., Agente Especial Fiscal del Área de Evasión Contributiva, con relación a la responsabilidad contributiva de los contribuyentes arriba mencionados para el período designado y para que traiga consigo y produzca para examen en el sitio, hora y fecha indicados, los siguientes libros, récords, papeles o constancias que arrojen luz sobre: (1) Copia de contratos de arrendamiento de espacio (boat space license agreement; e.g.) para embarcaciones mayores de 30 pies de eslora; (2) De no constar de la faz del contrato de arrendamiento de espacio, incluir información relacionada a: (i) número de muelle, (ii) dueño, (iii) nombre de la embarcación, (iv) eslora, (v) número de registro (documentación), y (vi) persona responsable del pago del arrendamiento (incluyendo persona que efectivamente hace el pago).*"

Con la información solicitada, "*el Secretario de Hacienda intenta establecer nexo suficiente para imponer contribuciones y determinar la identidad de la persona responsable del pago de las mismas*", según expresó el Procurador General en su *certiorari* del caso KLCE-2002-01217.

### I

A los fines de facilitar la comprensión de los casos separamos, para cada uno de ellos, una breve relación del trámite procesal.

**A: *Secretario de Hacienda del Estado Libre Asociado de Puerto Rico, Ex-Parte* (__KLCE-2002-01217__)**

El Secretario emitió un requerimiento de información dirigido a la Corporación Marina Puerto del Rey, Inc. (en adelante Puerto del Rey). El requerimiento antes citado se refería a contratos de arrendamiento y a diversa información que surge de la faz de contratos suscritos por Puerto del Rey y los usuarios de esta Marina. Puerto del Rey respondió por escrito que no produciría la información solicitada. Alegó Puerto del Rey que se trataba de una expedición de pesca vedada por la Constitución, que no se identificaba un contribuyente en particular sujeto de investigación, que no existían motivos fundados que justificaran o que hicieran razonable creer que un dueño de embarcación ha violado alguna disposición del Código de Rentas Internas que, previo al requerimiento, era necesaria una orden judicial y que la entrega de los documentos violentaría la confidencialidad en la contratación a la que son acreedores los clientes de Puerto del Rey.

El Departamento de Hacienda (en adelante el Departamento) acudió al TPI y solicitó una orden dirigida a forzar la entrega de la información solicitada bajo apercibimiento de desacato y amparada en la autoridad conferídale en ley.

El TPI dictó una orden *ex-parte* y requirió a Puerto del Rey cumplir con lo solicitado por el Departamento en siete días laborales, bajo apercibimiento de desacato. Puerto del Rey radicó una solicitud de reconsideración a la orden, reiterando los mismos planteamientos que había remitido antes al Secretario. Además, añade que los documentos e información requerida constaban en el Registro de Embarcaciones del Departamento de Recursos Naturales.

Ante el incumplimiento de Puerto del Rey, el Secretario solicitó que se le encontrara incurso en desacato. El TPI reconsideró, según lo solicitó Puerto del Rey, dejó sin efecto la orden, requirió al Secretario notificar su solicitud a la parte y le ordenó someter la dirección de la persona natural contra quien va dirigida la orden solicitada.

Inconforme con la determinación del TPI el Secretario presentó el recurso de *certiorari* y alegó que el TPI cometió error al no ordenar *ex-parte* la entrega de información y, por ende, que se limitaba su facultad investigativa sin que exista causa para considerar que se ha vulnerado la protección constitucional contra registros y allanamientos irrazonables.

## B: *Secretario de Hacienda del Estado Libre Asociado de Puerto Rico v. Inversiones Isleta Marina* (KLCE-2003-00571)

El Secretario formuló un requerimiento de información contra Inversiones Isleta Marina, Inc., (en adelante Inversiones), la cual requería información contenida en contratos bajo su custodia. Inversiones no entregó la información. Ante el incumplimiento, el Secretario acudió en solicitud de orden al TPI y requirió la entrega de los documentos en un plazo de siete días laborales. El Tribunal emitió la orden *ex-parte* a favor del Secretario. Posteriormente, Inversiones compareció al Tribunal y solicitó se dejara sin efecto la referida orden por entender que se violentaba la protección a la intimidad, se violentaban aspectos de confidencialidad en la contratación con terceros y se vulneraba la protección constitucional contra registros y allanamientos irrazonables.

Ante el incumplimiento con la orden del Tribunal, el Secretario solicitó se procesara por desacato a Inversiones y ésta presentó ante nos un recurso de *certiorari* en el cual solicita se deje sin efecto la orden de entrega de la información solicitada.

## C: *Secretario de Hacienda del Estado Libre Asociado de Puerto Rico v. San Juan Bay Marina, Inc.* (KLCE-2003-01245)

El Secretario remitió un requerimiento contra San Juan Bay Marina, Inc., (en adelante S.J.B.M.) para que compareciera al Departamento a presentar la información requerida. Ante la incomparecencia de S.J.B.M., el

Secretario acude al Tribunal para solicitar una orden de entrega de información, bajo apercibimiento de desacato. El Tribunal emitió la orden *ex-parte* e instruyó a S.J.B.M. que en los siguientes siete días laborables compareciera al Departamento y presentara la documentación requerida. La parte solicitó reconsideración en torno a la orden y el TPI se reiteró en la misma.

S.J.B.M. radicó un *certiorari* y sostiene que el TPI erró al dictar una orden *ex-parte* que viola derechos constitucionales de privacidad y constituye un registro y allanamiento sin el debido proceso de ley. Además, alegó que se trata de un requerimiento amplio que identifica a *"Juan del Pueblo"* como investigado y que la orden del Departamento no identifica algún contribuyente en particular que sea sujeto de investigación, por lo cual es ilegal.

El Departamento de Hacienda no ha comparecido.

**D:** ***Ponce Yacht and Fishing Club, Inc. v. Secretario de Hacienda del Estado Libre Asociado de Puerto Rico*** (<u>**KLCE-2003-01269**</u>)

El Secretario emitió un requerimiento de información contra Ponce Yacht and Fishing Club (en adelante Ponce Yacht). Ponce Yacht contestó por escrito y le negó acceso al Secretario a los documentos.

El Secretario acudió al Tribunal y solicitó una orden mediante la cual se requería que en los siguientes siete días laborables se entregara la información solicitada. El TPI dictó la orden ex-parte y requirió la entrega de los documentos bajo apercibimiento de desacato.

Ponce Yacht solicitó reconsideración a la orden y esta fue declarada no ha lugar.

Ponce Yacht presentó un escrito de *certiorari* y alegó la comisión de varios errores, a saber: que el requerimiento constituía una intromisión en los papeles y documentos privados de una parte y ello violenta la Constitución y que el Secretario no tiene un fin legítimo en su investigación dado que las embarcaciones documentadas están exentas del pago de arbitrios.

El Secretario no ha comparecido.

## II

### A. Fuentes y Alcance del Poder de Investigación de las Agencias Administrativas

Durante la primera mitad del siglo XX, la jurisprudencia federal se caracterizó por imponer límites estrictos respecto al alcance de los poderes de investigación de las agencias administrativas. Davis & Pierce, *Administrative Law Treatise*, 3ra ed. Boston, Little, Brown and Company, 1994, págs. 133-141. 2 *Am Jur 2d, Administrative Law* Sec. 137. Específicamente, se rechazaban aquellas investigaciones que pudieran catalogarse como expediciones de pesca. *Federal Trade Comm. v. American Tobacco Co.,* 264 U.S. 298, 305-306 (1924). En *Federal*, la FTC requirió a la American Tobacco Company la producción de toda la correspondencia cursada entre ésta y sus intermediarios durante el año 1921. El Juez Holmes quien escribió la opinión unánime del Tribunal Supremo de los Estados Unidos, expresó:

*"Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of it subordinate agencies to sweep all our traditions into the fire...and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime...It is contrary to the first principles of justice to allow a search through all the respondent's records, relevant or irrelevant, in the hope that something will turn up."* (Págs. 305-306).

Varios años mas tarde se reiteró la doctrina en un caso en el cual la agencia administrativa estaba facultada por ley con el poder de emitir órdenes relacionadas a *"cualquier investigación que la agencia considerara necesaria y propia"*. El Tribunal Supremo de Estados Unidos se reiteró en que las expediciones de pesca, *"uniformly [have been] met with judicial condemnation". Jones v. SEC*, 298 U.S. 1, 26 (1936). Como han señalado Davis y Pierce:

*"The combined effect of these pre-1940 holdings was to protect business against effective administrative investigation into business records. Meaningful investigation of the kind that was necessary to regulatory programs 'was contrary to the first principles of justice' and business was secure from snooping bureaucrats. The Constitution was a bulwark against governmental interference with free enterprise."* Davis & Pierce, *supra*, pág. 138.

La citada doctrina fue desplazada por una línea jurisprudencial que le reconoció amplios poderes de investigación a las agencias administrativas. La nueva doctrina cobró forma en el caso *United States v. Morton Salt Co.*, 338 U.S. 632 (1950), en el cual varios productores de sal se negaron a presentar informes requeridos por el Federal Trade Commission. El Tribunal Supremo de Estados Unidos se apartó de la norma establecida en *Federal* y dispuso lo siguiente:

*"We must not disguise the fact that sometimes, especially early in the history of the federal administrative tribunal, the courts were persuaded to engraft judicial limitations upon the administrative process. The courts could not go fishing, and so it followed neither could anyone else. Administrative investigations fell before the colorful and nostalgic slogan "no fishing expeditions"...Because judicial power is reluctant if not unable to summon evidence until it is shown to be relevant to issues in litigation it does not follow that an administrative agency charged with seeing that the laws are enforced may not have and exercise powers of original inquiry...[El poder de las agencias] is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence, but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. When investigative and accusatory duties are delegated by statute to an administrative body, it, too, may take steps to inform itself as to whether there is probable violation of the law."* (Págs. 641-643) (Énfasis suplido)

El reputado autor Bernard Schwartz explica la evolución jurisprudencial en torno a los poderes de investigación de las agencias administrativas de la siguiente forma:

*"Administrative agencies today have extensive power to take testimony under oath, inspect records and documents, and require the submission of reports. The boundaries of this power were fixed over the course of half a century, during a period in which judicial attitudes toward the propriety and permissibility of such investigations altered slowly, but dramatically."* Stein, Mitchell & Mezines, *Administrative Law*, Mathew Bender, 1995, sec. 19.02, págs. 19-24.

El Tribunal Supremo de Puerto Rico, en *Cooperativa Cafeteros P.R. v. Colón Torres*, 84 D.P.R. 278 (1961), adoptó la norma establecida en *Morton*. Nuestro más alto foro señaló lo siguiente:

*"Originalmente se había sostenido que las agencias administrativas no podían hacer expediciones de pesca en los organismos que reglamentaban, Fed. Trade Comm. v. Amer. Tobacco Co., 264 U.S. 298 (1924), pero la tendencia desde que se resolvió el caso de United States v. Morton Salt Co., 338 U.S. 632 (1950), es reconocer a las agencias administrativas amplios poderes para solicitar información de e investigar los organismos que éstas regulan y supervisan."* (Pág 284).

El Profesor Demetrio Fernández ha señalado que la contención de que las agencias administrativas están impedidas en embarcarse en las llamadas expediciones de pesca carece de valor legal y nos dice:

*"La tendencia contemporánea del derecho administrativo y constitucional respalda el principio de que las agencias administrativas poseen amplios poderes para requerir información al investigar los entes que regulan y supervisan. El ejercicio de ese poder no depende de si se ha cometido una violación".*
Demetrio Fernández, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Forum, 2001, pág. 222.

La validez de las investigaciones administrativas está sujeta a determinados criterios de razonabilidad establecidos jurisprudencialmente. Esos criterios son los siguientes: (1) que la investigación esté dentro de la autoridad de la agencia; (2) que el requerimiento no sea demasiado indefinido; y (3) que la información solicitada sea pertinente a la investigación. *E.L.A. v. Coca Cola Bott. Co.*, 115 D.P.R. 197, 208 (1984); *E.L.A. v. P.R. Tel. Co.*, 114 D.P.R. 394, 402 (1983); *Cooperativa Cafeteros P.R. v. Colón Torres, supra*, pág. 285. Véase, en la jurisdicción federal, *United States v. Morton Salt Co., supra*; *Oklahoma Press Pub. Co. v. Walling*, 327 U.S. 186, 208 (1946). Debido a que este tipo de investigación muchas veces está precisamente dirigida a descubrir si ha habido una violación de ley, no es necesario que la investigación sea precedida por la presentación de una querella formal, demanda, o acusación criminal. *Comisionado de Seguros v. Bradley*, 98 D.P.R. 21, 31 (1969).

La única limitación que tienen las agencias administrativas en cuanto al alcance de su capacidad de requerir información, es que se satisfagan los criterios de razonabilidad mencionados anteriormente. *Cooperativa Cafeteros P.R. v. Colón Torres, supra*, pág. 286.

Nuestro ordenamiento jurídico le reconoce a las agencias administrativas un amplio poder de investigación y, como corolario de ese poder, la facultad de requerir información a las personas naturales y jurídicas sujetas a su jurisdicción. Dicha facultad surge expresamente de la Ley de Procedimiento Administrativo Uniforme, la cual, en su sección 6.2, 3 L.P.R.A. sec. 2192, dispone lo siguiente:

*"Las agencias podrán requerir información de las personas sujetas a su jurisdicción, al amparo de las leyes que administran y dentro de la zona de intereses contempladas en las mismas....".*

## B. Fuentes y Alcance del Poder de Investigación del Secretario de Hacienda

El Secretario de Hacienda tiene la obligación de administrar el sistema de rentas internas del gobierno y cobrar las contribuciones impuestas por ley. 3 L.P.R.A. secs. 283(c) y 283(f). La naturaleza de esta obligación hace imprescindible que el funcionario posea amplios poderes de investigación.

Nuestra Asamblea Legislativa, por medio del Artículo 15 de la Ley 230 del 23 de julio de 1974, 3 L.P.R.A. sec. 283n, otorgó al Secretario de Hacienda amplias facultades para investigar y requerir información:

*"(a) En el ejercicio de sus deberes, el Secretario y los funcionarios y empleados en quien éste delegue quedan autorizados para citar testigos y tomar juramentos y declaraciones, y en cumplimiento de estas disposiciones, podrán extender citaciones bajo apercibimiento y obligar la comparecencia de testigos; y podrán obligar a los testigos a presentar libros, cartas, documentos, papeles, expedientes y todos los demás artículos que se consideren esenciales para un completo conocimiento del asunto objeto de investigación. (Énfasis suplido).*

*...*

*(d) En caso de rebeldía o negativa a obedecer una citación expedida por el Secretario o por el funcionario designado por éste, cualquier sala del Tribunal Superior de Puerto Rico dentro de cuya jurisdicción se encuentre, resida, tenga negocios o desempeñe sus funciones la persona culpable de la rebeldía o negativa, deberá a solicitud del Secretario, expedir contra dicha persona una orden requiriéndole a comparecer ante el Secretario, o ante el funcionario designado por éste, para presentar evidencia, si así se ordenare, o para declarar sobre el*

*asunto bajo investigación. Dicha persona incurrirá en desacato si desobedeciese la orden del Tribunal."*

El amplio poder de investigación se incorporó, además, en las secciones 6120 y 6121 (a) del Código de Rentas Internas de 1994, 13 L.P.R.A. sec. 8120 y 8121, respectivamente.

Sec. 8120. El Secretario deberá, de tiempo en tiempo, hacer encuestas con respecto a todas las personas obligadas al pago de cualquier contribución o impuestos, y hacer listas de dichas personas.

Sec. 8121. (a) *Para Determinar Responsabilidad del Contribuyente.* Con el fin de determinar la corrección de cualquier planilla o declaración, o con el fin de preparar una planilla cuando ninguna se hubiere rendido, el Secretario podrá, por conducto de cualquier funcionario o empleado del Departamento de Hacienda, examinar cualesquiera libros, papeles, constancias o memorandos pertinentes a las materias que deben incluirse en la planilla o declaración, y podrá requerir la comparecencia de la persona que rinde la planilla o declaración o la de cualquier oficial o empleado de dicha persona, o la comparecencia de cualquier otra persona que tenga conocimiento tocante al asunto de que se trate, y tomarles declaración con respecto a las materias que por ley deban incluirse en dicha planilla o declaración, con facultad para tomar juramentos a dicha persona o personas.

La Asamblea Legislativa ha investido al Secretario de Hacienda con amplias facultades de investigación, pues descansa sobre sus hombros la esencial e indispensable responsabilidad fiscal del gobierno. 3 L.P.R.A. secs. 283 (c) y 283(f).

El poder de investigación del Secretario fue reconocido y delimitado por nuestro Tribunal Supremo hace más de cuarenta años. En *Secretario de Hacienda v. Tribunal Superior,* 81 D.P.R. 666 (1960), la controversia giraba en torno a si el Secretario podía requerir a un banco que se le permitiera examinar ciertos documentos relacionados a las transacciones bancarias de un contribuyente que era objeto de una investigación. El Tribunal Supremo expresó que la facultad investigativa concedida al Secretario por la sección 413 de nuestra anterior Ley de Contribuciones sobre Ingresos, ██ es de *naturaleza inquisitiva* (pág. 672). Señaló además nuestro más alto foro que esta facultad *"es indispensable para que dicho funcionario pueda cumplir con su obligación de cobrar las contribuciones sobre ingresos impuestas por ley"* (pág. 672) y, siendo así, *"debe ser interpretada liberalmente"* (pág. 672).

Los poderes de investigación y de requerimiento de información investidos en el Secretario, al igual que el poder de investigación de cualquier agencia administrativa, podrían ser utilizados de manera abusiva. Es por ello que nuestra Asamblea Legislativa, en la Sección 6.2 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P. R.A. sec. 2192, ha previsto que cuando un requerimiento de información sea irrazonable o exceda la jurisdicción de la agencia, podrá impugnarse en los tribunales:

*"Toda persona a la que se le solicite información, conforme se autoriza en esta sección, podrá impugnar la solicitud de la agencia por medio del procedimiento adjudicativo según se establezca en la ley especial de que se trate y en las secs. 2151 a 2168 de este título. La impugnación sólo podrá fundamentarse en que el requerimiento de información sea irrazonable o exceda la autoridad de la agencia por no tener relación alguna con la zona de intereses contemplados en la ley o leyes de que se trate."*

Las secciones 7601 y 7602 del Código Federal de Rentas Internas de 1954 (26 U.S.C.A. secs. 7601 y 7602) son similares a las ya mencionadas secciones 6120 y 6121(a) de nuestro Código de Rentas Internas. Aquellas leen como sigue:

*"Sec. 7601. The Secretary or his delegate shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax, and all*

*persons owning or having the care and management of any objects with respect to which any tax is imposed.*

*Sec. 7602. Authority to summon, etc. For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized: (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry; (2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary may deem proper, to appear before the Secretary at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and (3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."*

El Tribunal Supremo de los Estados Unidos interpretó las referidas secciones en el caso de *United States et al. v. Bisceglia*, 420 US 141 (1975), y reconoció la validez de una orden dirigida a los Bancos para que le entregaran información sobre depósitos irregulares hechos por personas no identificadas. En el caso de Bisceglia, el IRS le requirió a un banco la producción de todos los documentos que pudiesen proveer información relevante a la persona o personas que hubiesen depositado una cantidad de dinero irregular durante determinado período de tiempo. Específicamente, entre el 6 y el 16 de noviembre de 1970, se realizaron dos depósitos distintos en la Sucursal de Cincinnati del Federal Reserve Bank of Cleveland. Cada uno de esos depósitos constaba de $20,000 en billetes de $100. Dichos billetes exhibían características que indicaban que habían sido almacenados en condiciones anormales durante un largo período de tiempo. El hecho de que la cantidad de dinero depositada era altamente inusual, unido al deterioro de los billetes, causaron que el IRS sospechara que era posible que esas transacciones no se hubiesen reportado para propósitos contributivos. Ya que el IRS desconocía la identidad de la persona o personas que habían realizado dichos depósitos, la información solicitada era referente a *"John Doe"*. El banco se negó a cumplir con el requerimiento. El IRS recurrió al Tribunal de Distrito Federal, solicitó una orden de cumplimiento, y éste la emitió, reduciendo el alcance del requerimiento a la producción de recibos de depósitos mayores de $5,000 que incluyeran billetes de $100 durante el período comprendido entre el 16 de octubre de 1970 y el 16 de noviembre de ese mismo año. El Tribunal de Apelaciones federal revocó. Este Tribunal sostuvo que la sección 7602 del Código Federal de Rentas Internas *"presupposes that the [Internal Revenue Service] has already identified the person in whom it is interested as a taxpayer before proceeding"*. 486 F.2d 706, 710. El Tribunal Supremo de los Estados Unidos revocó al apelativo, confirmando así la legalidad de la orden emitida por el tribunal federal de primera instancia.

El razonamiento del tribunal en *Bisceglia* puede resumirse de la siguiente manera. La estructura de contribuciones sobre ingresos en que se basa el sistema federal de rentas internas depende de la buena fe de los contribuyentes. Es decir, a pesar de que existe una obligación jurídica de rendir contribuciones, el gobierno debe confiar en que los ciudadanos revelen toda la información relevante a su responsabilidad contributiva. Sin embargo, señala el tribunal, algunas personas intentan evadir su responsabilidad, y esas personas rara vez son identificables de antemano. Es por eso que el IRS ha sido provisto con ciertos poderes de investigación que no están limitados a situaciones en las cuales existe causa probable para creer que ha ocurrido una violación a las leyes contributivas. Véase, además, *United States v. Powell*, 379 U.S. 48 (1964).

En Bisceglia, la controversia giraba en torno a si las secciones 7601 y 7602 del Código Federal de Rentas Internas estaban sujetas a una lectura restrictiva. El Tribunal Supremo Federal expresó:

*"Section 7601 permits the Internal Revenue Service to investigate and inquire after "all persons...who may be liable to pay any internal revenue tax..." To aid this investigative function, 7602 authorizes the summoning of "any...person" for the taking of testimony and examination of books which may be relevant for "ascertaining the*

*correctness of any return, ...determining the liability of any person...or collecting any such liability...". Plainly, this language is inconsistent with an interpretation that would limit the issuance of summonses to investigations which have already focused upon a particular return, a particular named person, or a particular potential tax liability."* (Pág. 149). (Énfasis suplido). █

Apuntando al hecho de que la naturaleza de las investigaciones contributivas requieren una interpretación liberal de las secciones en cuestión, el Tribunal añadió:

*"It would seem elementary that no meaningful investigation of such events could be conducted if the identity of the persons involved must first be ascertained, and that is not always an easy task."* (Pág. 150).

Y en referencia a la oposición del banco para con la investigación del Servicio de Rentas Internas Federal, el Tribunal se expresó de la siguiente manera:

*"Fiduciaries and other agents are understandably reluctant to disclose information regarding their principals, as respondent was in this case. Moreover, if criminal activity is afoot the persons involved may well have used aliases or taken other measures to cover their tracks. Thus, if the Internal Revenue Service is unable to issue a summons to determine the identity of such persons, the broad inquiry authorized by 7601 will be frustrated in this class of cases."* (Pág. 150).

Tanto la jurisprudencia puertorriqueña como la federal claramente indican que las disposiciones legislativas que se refieren a las facultades investigativas del oficial gubernamental que tiene como obligación el cobro de las contribuciones impuestas por ley, deben ser interpretadas liberalmente. Dicha facultades investigativas no dependen de que haya causa probable para creer que ha habido una violación de ley, sino que pueden comenzarse para *determinar* si alguna violación ha ocurrido. *United States v. Powell, supra, United States v. Carter,* 489 F. 2d 413 (1973). Además, cualquier interpretación en la cual se le requiera al Secretario de (o del Internal Revenue Service) conocer de antemano la identidad de la persona o personas a las cuales va dirigida una investigación, es una interpretación demasiado restrictiva que no permitiría a este funcionario cumplir efectivamente con sus obligaciones y, por lo tanto, errónea.

## C. Constitucionalidad del Requerimiento

Nos resta examinar si la solicitud del Secretario está en conflicto con el derecho a la intimidad de los requeridos. Cualquier investigación administrativa, así como cualquier acción estatal, resultaría inválida si entrara en conflicto con una disposición constitucional. Las agencias administrativas han sido facultadas con amplios poderes de investigación, pero sus acciones podrían ser declaradas inválidas por un Tribunal con jurisdicción si se determina que éstas violan el derecho a la intimidad, según reconocido por la Constitución de los Estados Unidos, la del Estado Libre Asociado de Puerto Rico y la jurisprudencia aplicable.

Tanto la jurisprudencia federal como los tratadistas son claros en cuanto al hecho de que la protección contra registros y allanamientos irrazonables, según contenida en la Cuarta Enmienda de la Constitución de los Estados Unidos, no requiere que una solicitud de producción de documentos emitida por una agencia administrativa sea precedida por una orden judicial. *Donovan v. Lone Steer, Inc.,* 464 U.S. 408 (1984); *Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186 (1946); Stein, Mitchell & Mezines, *Administrative Law, supra,* sec. 19.04(2); Bernard Schwartz, *Administrative Law,* 3era ed., Little, Brown and Company, 1991, págs. 139-141.

Por el contrario, un requerimiento de producción de documentos será válido si cumple con los estándares de razonabilidad establecidos jurisprudencialmente. La persona requerida que entienda que determinada solicitud de producción de documentos no cumple con dichos estándares de razonabilidad, tiene el derecho de recurrir al tribunal. De entender el Tribunal que el requerimiento es razonable, emitirá una orden para su cumplimiento.

*United States Et Al v. Bisceglia, supra,* pág 146; *Donovan v. Lone Steer, Inc., supra,* pág. 415. En ese sentido, son los tribunales quienes otorgan fuerza de ley a los requerimientos administrativos de producción de documentos. Schwartz, *Administrative Law, supra,* pág. 130.

La inspección física de una localidad, sin embargo, está sujeta a unos estándares más estrictos. En tales casos, la validez de la acción de la agencia depende de que ésta vaya precedida por una orden judicial, siempre y cuando no medie una de las excepciones generales que dan lugar a los registros sin orden. 3 L.P.R.A. sec. 2191; *Camara v. Municipal Court,* 387 U.S. 523 (1967); *See v. City of Seattle,* 387 U.S. 541 (1967).

En Puerto Rico, las secciones 1, 8 y 10 del Artículo II de la Constitución del Estado Libre Asociado protegen el derecho a la intimidad. El primer párrafo de la sección 10 antes mencionada escuda a los ciudadanos contra citaciones administrativas irrazonables. ▋ *E.L.A. v. P.R. Tel. Co. supra,* pág. 401. Una persona puede invocar con éxito la protección constitucional contra registros y allanamientos irrazonables si demuestra la existencia de una *expectativa razonable* de intimidad sobre la información requerida. En el caso de *Pueblo v. Lebrón,* 108 D.P.R. 324, 331 (1979), nuestro Tribunal Supremo expresó que la cuestión central al determinar una violación al derecho a la intimidad, *"es si la persona tiene un derecho razonable a abrigar, donde sea, dentro de las circunstancias del caso específico, la expectativa de que su intimidad se respete".* Ver además *R.D.T. Const. Corp. v. Contralor I,* 141 D.P.R. 424, 435 (1996); *E.L.A. v. P.R. Tel Co., supra,* pág. 402.

En el caso que nos ocupa, las diversas Marinas no han demostrado que exista una expectativa razonable de intimidad sobre los documentos requeridos. De hecho, tal expectativa de intimidad no existe en relación a la información y documentos relacionados al contrato de arrendamiento en cuestión. La existencia de ese contrato queda demostrada por la presencia de la embarcación en el muelle, hecho perceptible a simple vista. Además, el alcance del derecho a la intimidad depende de lo que es aceptable para la sociedad, en términos del balance entre el interés público y el derecho del ciudadano a su seguridad personal, libre de interferencias arbitrarias por parte del Estado. *R.D.T. Const. Corp. v. Contralor I, supra,* pág. 440.

El caso de autos es claramente distinguible de los casos en los cuales se les solicita información a las entidades bancarias sobre sus clientes. El valor que la sociedad puertorriqueña está dispuesta a reconocerle a la información relacionada con transacciones bancarias, responde a prácticas y costumbres bancarias generalmente aceptadas por nuestra sociedad, y al hecho de que el recurrir a las instituciones bancarias se ha convertido en una actividad necesaria para participar efectivamente en la economía del país. *R.D.T. Const. Corp. v. Contralor I, supra,* pág. 441.

La información requerida en este caso, por el contrario, está relacionada con un contrato de arrendamiento de espacio para embarcaciones mayores de 30 pies de eslora, es decir, una actividad mayormente recreativa que no es esencial a la dinámica diaria económica del país.

Por otra parte, aun cuando se entendiera que los dueños de embarcaciones albergan una expectativa razonable de intimidad con relación a la información requerida, su validez estaría sujeta a la razonabilidad del requerimiento. Existe una distinción entre un registro con finalidad penal y un registro de carácter administrativo.

Mientras menos se asemejen las consecuencias del registro administrativo a las de un registro penal, más flexible serán los parámetros que rijan la razonabilidad del requerimiento. Nuestra jurisprudencia ha establecido unos criterios más flexibles para determinar la razonabilidad de una investigación administrativa. *E.L.A. v. Coca Cola Bott. Co., supra,* págs. 212-213. Para que se pueda determinar que una investigación administrativa está en conflicto con el derecho a la intimidad de los investigados, es necesario examinar el método que utiliza la agencia para conducir su investigación.

Existe una clara distinción entre la entrada a la oficina del investigado y la incautación física de documentos y

la que resulta de un requerimiento de producción de información. *E.L.A. v. Coca Cola Bott. Co., supra,* pág. 208; *R.D.T.Const. Corp. v. Contralor I, supra,* pág. 433.

En el caso de autos se cuestiona la validez de un requerimiento del Secretario para la producción de información relacionada a unos contratos de arrendamiento. Casos como este, los cuales no envuelven la entrada a oficinas privadas o la incautación física de información documental, no requieren una determinación judicial de causa probable. *United States Et Al v. Powell, supra.* En el caso *R.D.T, Const. Corp. v. Contralor I, supra,* pág. 444, se validaron las facultades investigativas del Contralor que envuelven el poder para emitir un *sub poena* para que la persona investigada produzca ciertos documentos sin necesidad de que medie una orden judicial previa. A diferencia de los registros con propósitos penales, en el registro administrativo el concepto de causa probable debe medirse a la luz de una visión más flexible de la garantía constitucional contra registros y allanamientos irrazonables. *E.L.A. v. Coca Cola Bott. Co., supra,* pág. 213.

El caso de autos debe también distinguirse de lo resuelto por el Tribunal Supremo de Puerto Rico mediante sentencia en *Pueblo v. Cedeño Laclaustra,* 157 D.P.R. ___, **2002 J.T.S. 117**. En *Cedeño,* se decidió que una persona que llega al aeropuerto alberga una expectativa razonable de intimidad sobre el contenido de su maleta. Esa expectativa de intimidad lo protege contra un registro del contenido de su equipaje usando rayos X, dirigido a verificar el cumplimiento de una ley contributiva. Nuestro Tribunal Supremo determinó que un registro de ese tipo era uno irrazonable en violación a la Sección 10 del Artículo II de la Constitución del Estado Libre Asociado. El fundamento para esa determinación, fue que si bien los tribunales federales han validado los registros de equipaje, sean éstos físicos o a través de rayos X (sin mediar orden judicial), dicha validez depende de los propósitos del registro. Un registro de equipaje en un aeropuerto en el que no media orden judicial, es válido si éste tiene como propósito el garantizar la seguridad de la transportación aérea. Nuestro más alto foro determinó que el registro de equipaje, cuya validez se cuestionaba en *Cedeño,* buscaba identificar artículos tributables y por lo tanto era uno irrazonable e intolerable constitucionalmente.

El caso de autos trata de un requerimiento dirigido a la producción de documentos relacionados a unos contratos de arrendamiento. Más aún, en *Cedeño,* la conexión entre lo registrado y la ley cuya violación se investigaba era mucho más atenuada que la que existe en el caso de autos, donde se requiere información que se limita y ajusta exactamente a los propósitos de la investigación.

## III

Al no haber violación al derecho a la intimidad, debemos examinar la razonabilidad del requerimiento formulado por el Secretario a base de la autoridad del funcionario, el alcance de la orden y la pertinencia de los documentos requeridos.

Del requerimiento de información citado al inicio de la sentencia no se desprende que el Secretario tenga identificada una persona que haya incumplido con su responsabilidad contributiva y por ello se le identifica como "*Juan del Pueblo*". De hecho, todo indica que el requerimiento de información dirigido a las Marinas va dirigido a descubrir si ha ocurrido dicho incumplimiento.

El requerimiento no se hace ineficaz por el hecho de que no esté identificada, *a priori,* la persona objeto de la investigación. *United States Et Al v. Bisceglia, supra.* El hecho de que el sistema de recaudos se origina en la buena fe del contribuyente que voluntariamente rinde sus contribuciones, obliga a un examen liberal del poder del Secretario.

Corresponde determinar si el requerimiento del Secretario satisface los criterios de razonabilidad establecidos en nuestra jurisprudencia. Los criterios son los siguientes: (1) que la investigación esté dentro de la autoridad de la agencia; (2) que el requerimiento no sea demasiado indefinido; y (3) que la información solicitada sea pertinente a la investigación.

En el contexto del requerimiento en cuestión, el primero de estos criterios —que la investigación esté dentro de la autoridad de la agencia—, claramente fue satisfecho. Nuestra legislatura ha facultado al Secretario de Hacienda con el poder de citar testigos y de requerir a éstos los documentos que estime necesarios en el curso de una investigación. 3 L.P.R.A sec. 283n, 13 L.P.R.A. secs. 8120 y 8121. El realizar investigaciones en relación al cumplimiento de la responsabilidad contributiva de cualquier ciudadano, claramente forma parte del poder de investigación del Secretario de Hacienda. El Secretario tiene amplios poderes de investigación que deben ser examinados con liberalidad. *Secretario de Hacienda v. Tribunal Supremo, supra,* pág. 672.

El segundo de los criterios de razonabilidad requiere que la información solicitada no sea demasiado indefinida. Al enfrentar un cuestionamiento similar, contra un requerimiento de información presentado por el Contralor, nuestro Tribunal Supremo evaluó con liberalidad la amplitud del reclamo.

En *H.M.C.A. (P.R.), Inc., etc. v. Contralor,* 133 D.P.R. 945 (1993), el Contralor solicitó la producción de ciertos documentos relacionados con el uso de las facilidades del Hospital Subregional de Carolina por parte de H.M.C.A. en virtud de un contrato que existía entre esa corporación y el Departamento de Salud para administrar y operar el inmueble. La parte recurrente alegó que dicho requerimiento era demasiado indefinido. En la sección impugnada del requerimiento del Contralor se solicitaba lo siguiente: "*Cualesquiera otros libros, cartas, documentos, papeles, expedientes y todos los demás objetos relacionados que nuestros auditores estimen pertinentes para un completo conocimiento del asunto bajo investigación*". El Tribunal Supremo de Puerto Rico determinó que dicho requerimiento no era demasiado indefinido, sino que se refería a una categoría más o menos amplia que comprendía los documentos corporativos razonablemente relacionados con el uso de las facilidades antes mencionadas. *H.M.C.A. (P.R.), Inc., Etc. v. Contralor, supra,* pág. 970.

Al examinar el contexto de un requerimiento administrativo de información, el Tribunal Supremo Federal expresó: "*Broadness alone is not sufficient justification to refuse enforcement of a subpoena.*" *C.A.B. v. Hermann,* 353 U.S. 322 (1957). Además, el hecho de que el cumplimiento con un requerimiento de información implique el proveer miles de documentos no lo hace, de por sí, irrazonable. *N.L.R.B. v. G.H.R. Energy Corp.,* 707 F.2d 110 (5th Cir. 1982).

En el caso de autos, el Secretario de Hacienda ha solicitado a las Marinas lo siguiente: (1) Copia de contratos de arrendamiento de espacio (boat space license agreement, e.g.) para embarcaciones mayores de 30 pies de eslora; (2) De no constar de la faz del contrato de arrendamiento de espacio, incluir información relacionada a:

*"(i) número de muelle,*

*(ii) dueño,*

*(iii) nombre de la embarcación,*

*(iv) eslora,*

*(v) número de registro (documentación) y*

*(vi) persona responsable del pago del arrendamiento (incluyendo persona que efectivamente hace el pago). En este caso, el Secretario señaló en su solicitud clara y específicamente cuál era la información requerida. Por lo tanto, el requerimiento no está en conflicto con este segundo criterio."*

El requerimiento de información es claro, específico y cumple con el requisito jurisprudencial.

Por último, nos resta determinar si la información solicitada es pertinente a la investigación. En la "*Solicitud*

*de Certiorari"* sometida por el Secretario en el caso de Puerto del Rey, se describió la pertinencia de la investigación de la siguiente forma: *"el Secretario de Hacienda intenta establecer nexo suficiente para imponer contribuciones y determinar la identidad de la persona responsable del pago de las mismas"*. Con su requerimiento, el Secretario de Hacienda busca establecer la identidad de dichas personas, para así determinar su responsabilidad contributiva, si alguna. Resulta forzoso concluir que el conocer la identidad de las personas que introducen embarcaciones a Puerto Rico, es pertinente para realizar la investigación en cuestión.

El requerimiento de información que el Secretario de Hacienda ha formulado es uno razonable, según los criterios establecidos jurisprudencialmente.

En resumen, el requerimiento de información solicitado por el Secretario está dentro de la autoridad conferida por ley, es claro y específico y la información solicitada es pertinente al asunto bajo investigación; por lo tanto, se trata de un ejercicio legítimo del poder de investigación.

La acción del Secretario no vulnera la protección constitucional contra registros y allanamientos, ni violenta norma jurídica alguna.

Por los fundamentos expuestos, se confirma la sentencia del Tribunal de Primera Instancia en los casos KLCE-2003-00571, KLCE-2003-01245 y KLCE-2003-01269. En el caso KLCE-2002-01217, se expide el auto y se revoca la resolución del Tribunal de Primera Instancia.

Se ordena a las Corporaciones Marina del Puerto, Inversiones Isleta Marina, Inc., San Juan Bay Marina, Inc. y Ponce Yacht and Fishing Club entregar al Secretario de Hacienda la información y documentos requeridos en los próximos siete días laborables.

Así·lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2004 DTA 118

**1.** Equivalente a la sección 6121 (a) del Código de Rentas Internas de 1974.

**2.** Valga señalar que en 1976, el Congreso Federal enmendó el Código de Rentas Internas añadiendo a este cuerpo legal la sección 7609(f), titulada *Additional Requirement in the Case of a John Doe Summons*. Dicha sección, señaló el Tribunal Supremo de Estados Unidos en *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310 (1985), fue la respuesta legislativa a la decisión de *Bisceglia*. La sección 7609 (f), le requiere al IRS obtener autorización judicial antes de requerir información sobre la responsabilidad contributiva de terceros no identificados. Ver además *In re: Does*, 688 F.2d 144, 148. Debe entenderse que, ausente una acción legislativa similar en Puerto Rico, el razonamiento de *Bisceglia* aún sigue siendo relevante en la interpretación de las secciones 6120 y 6121 (a) de nuestro Código de Rentas Internas.

**3.** Artículo II, § 10 Constitución del E.L.A.: *"No se violará el derecho del pueblo a la protección de sus personas, casas, papeles y efectos contra registros, incautaciones y allanamientos irrazonables"*.